UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CRYSTAL PERKS, as Special Administrator of the Estate of JASON WAYNE COX, Sr., Deceased </br></br>     Plaintiff, </br></br>          v. </br></br> COUNTY OF SHELBY, an Illinois Municipal corporation d/b/a SHELBY COUNTY JAIL, SHERIFF MICHAEL MILLER, TERRY B. HEIMAN, ADAM D. SMITH, CORRECTIONAL OFFICER RYAN MOORE, CHERYL ANNE WOODS and VAL RHODES, </br></br>     Defendants. | Case No. 09 C 3154 </br></br> Judge Richard Mills </br> Magistrate Judge Charles H. Evans |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I, II, IV, V, AND VI OF PLAINTIFF'S COMPLAINT**

**LEGAL STANDARDS–MOTIONS TO DISMISS**

Dismissal is warranted under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). Although complaints filed in federal court need only plead claims, not facts, the pleading regimen envisioned by Bell Atlantic requires that a complaint allege at least a plausible theory of liability against each defendant. Limestone Dev. Corp. v. Village of Lemont, Ill., 520 F.3d 797, 803-04 (7th Cir. 2008).

**FACTS**

Plaintiff Crystal Perks is the Special Administrator for the Estate of Jason Wayne Cox, Sr., deceased (Comp. ¶ 3). Defendant Shelby County is a municipal corporation which operated

the Shelby County Jail and Sheriff Michael Miller was the duly elected law enforcement official representing Shelby County (¶¶ 4, 7). Defendants Moore, Terry Heiman and Adam Smith were Correctional Officers working at the Jail, Defendant Cheryl Anne Woods was a licensed clinical social worker ("LCSW") working at the Jail, and Defendant Val Rhodes was a supervising Correctional Officer, all of whom were employed by Shelby County (¶¶ 8-15). On June 11, 2008, Cox was convicted of misdemeanor criminal trespass to property (08 CM 123, Shelby County Circuit Court) and was sentenced to six months incarceration (¶ 5). Cox was placed that day in the Shelby County Jail (¶ 6). Cox (who was bi-polar and depressed) became agitated and uncooperative and had to be forcibly subdued, after which time Cox repeatedly head-butted the padded cell door (¶¶ 6, 18). C.O. Smith recommended that Cox be evaluated further and that jail personnel use caution when dealing with him (¶¶ 6, 9). Cox advised C.O. Moore that he had a prior psychiatric history and that he had attempted suicide five months earlier; C.O. Moore also observed that Cox was in mental distress (¶ 18). Shelby County policy dictated that Cox should have been referred to a mental health professional for further examination but Moore failed to arrange the appropriate referral (¶ 19).

Two days later, on June 13, 2008, Cox advised LCSW Woods of a suicide attempt a year earlier, of his history of narcotics abuse and hallucinations and indicated that he didn't know if "he could stand incarceration" (¶ 20). Cox also requested that his medication be increased but Defendants failed to contact a physician so that Cox's medication could be increased (¶¶ 20-21). Eight days later, on June 21, 2008, Cox took his own life while inside his jail cell (¶ 21).

Count I alleges that Defendants Heiman, Smith, Moore, Anne Woods and Rhodes were "deliberately indifferent" to Cox's serious psychiatric condition through their failure to properly

classify Cox as a suicide risk and that this deliberate indifference violated Cox's right to due process, as protected by the Fifth and Fourteenth Amendments.  In a parallel due process count (Count II), Plaintiff alleges that Shelby County and Sheriff Miller knew or should have known about the conduct of the Individual Defendants and that the County and Sheriff Miller negligently failed to "instruct, supervise, control and discipline" the Individual Defendants (¶¶ 30-31).  Count III alleges that the "deliberate indifference" of the Individual Defendants violated Cox's Eighth Amendment right to be free from cruel and unusual punishment.  Count IV is a parallel Eighth Amendment claim against Shelby County and Sheriff Miller.  Count V alleges that Defendants were negligent in their care of Cox, in violation of Illinois' Wrongful Death Act (740 ILCS 180), and that their negligence resulted in Cox's suicide.  Count VI alleges that Shelby County and Sheriff Miller maintained a video surveillance system but that they erased the events of June 21, 2008 from the video surveillance system; according to Plaintiff, Plaintiff "will be unable to prove her negligence claim against Defendants" because of this alleged "spoilation" of evidence (¶ 52).[1]

**I.     PLAINTIFF'S DUE PROCESS CLAIMS (COUNTS I & II) SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS CONVICTED PRIOR TO HIS INCARCERATION AND THEREFORE ONLY THE EIGHTH AMENDMENT (AND NOT THE DUE PROCESS CLAUSE) APPLIES**

Plaintiff's claims that Defendants were deliberately indifferent to Cox's situation fall under the Cruel and Unusual Punishment Clause of the Eighth Amendment, which protects inmates from a prison official's deliberate indifference to a serious harm or medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976).  While the Due Process Clause of the Fourteenth

---

[1] Defendants have filed an answer to Count III of Plaintiff's Complaint but move herein for the dismissal of all other counts in the Complaint.

Amendment extends this Eighth Amendment right to pre-trial detainees, Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005), there is no reason why this Court should consider the Due Process Clause since Plaintiff specifically alleges in the Complaint that Cox was convicted of criminal trespass on June 11, 2008 and that he was sentenced that same day to six months of incarceration (Comp. ¶ 5).

A due process claim should be rejected if the right being asserted falls under a more specific constitutional mandate, such as the Fourth or Eighth Amendment. See e.g. Graham v. Connor, 490 U.S. 386 (1989) (the Fourth Amendment, rather than substantive due process, must be applied to a claim involving the use of excessive force in effecting an arrest); Whitley v. Albers, 475 U.S. 312 (1986) (the Eighth Amendment is the source of a prisoner's protection against being shot in the leg during the quelling of a riot). Since Plaintiff was already convicted and serving his sentence at the time of his suicide, the Eighth Amendment applies, not the Due Process Clause. Accordingly, Counts I and II of the Complaint are both subject to dismissal.

II. **THE OFFICIAL CAPACITY CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE REDUNDANT AND SUBJECT TO DISMISSAL SINCE PLAINTIFF HAS ALSO SUED THE ENTITY WHICH EMPLOYS THE INDIVIDUAL DEFENDANTS (SHELBY COUNTY)**

A lawsuit brought against individuals in their official capacities is treated as if the lawsuit were brought directly against the government entity for which they work. Gray v. Lacke, 885 F.2d 399, 405 (7th Cir. 1989); Estate of Brown v. Meierdirk, 2008 WL 4630593 (W.D. Wis.). However, when a plaintiff sues government officials in their official capacity as well as the governmental entity employing those officials, it is proper to dismiss the official capacity claims as redundant. See Carpenter v. Office of the Lake County Sheriff, 2007 WL 1296998 (N.D.Ill.)

("because Plaintiff's claims against Sheriff Curran and (Correctional Director) De Filippo are redundant to Plaintiff's claims against the Lake County Sheriff's Office, the Court dismisses Sheriff Curran and De Filippo in their official capacities from this lawsuit").

In this case, Plaintiff is asserting official capacity claims against all of the Individual Defendants (Miller, Heiman, Smith, Moore and Rhodes) but has also included Shelby County as a defendant in the case. As these claims are considered identical and redundant under the law, Plaintiff's official capacity claims against the Individual Defendants should be dismissed.

### III.   PLAINTIFF'S EIGHTH AMENDMENT CLAIM AGAINST SHELBY COUNTY AND SHERIFF MILLER (COUNT IV) SHOULD BE DISMISSED SINCE PLAINTIFF HAS NOT ALLEGED THAT THE ALLEGED CONSTITUTIONAL DEPRIVATIONS COMMITTED BY THE DEFENDANT CORRECTIONAL OFFICERS OCCURRED PURSUANT TO A CUSTOM OR POLICY OF SHELBY COUNTY

The doctrine of *respondeat superior* does not apply to § 1983 claims and Shelby County and Sheriff Miller are only liable in this case if the Individual Defendants' "deliberate indifference" was the result of a custom or policy established by County officials. Klebanski v. Sheahan, 540 F.3d 633, 637 (7th Cir. 2007); Frake v. City of Chicago, 210 F.3d 779, 781 (7th Cir. 2000) ("A plaintiff must show that municipal policymakers made a deliberate choice among various alternative and that the injury was caused by the policy."). In this case, Plaintiff has not asserted that Cox's death was caused by an unconstitutional custom or policy. To the contrary, Plaintiff alleges in her Complaint that Shelby County policy required that (a) correctional employees determine the applicable level of care to be rendered to inmates and (b) refer individuals to a mental health professional for further examination when faced with a potentially suicidal individual like Cox (Comp. ¶ 19). While Plaintiff alleges that Defendant Moore failed

5

to follow County policy in this case (Comp. ¶ 19), the County and Sheriff are simply not liable under Klebanski for any alleged failure by Moore (or other correctional officers for that matter) to follow County protocol.

Nor are Shelby County and Sheriff Miller liable for their allegedly negligent failure to "instruct, supervise, control and discipline" the Defendant Correctional Officers in this case (Comp. ¶¶ 30, 38). While Plaintiff alleges that the County and Sheriff Miller either knew or should have known about the misconduct of the Correctional Officer Defendants (Comp. ¶ 39), these allegations of garden variety negligence are insufficient to support a constitutional claim against the County and Sheriff Miller. To have a cause of action against County and Sheriff Miller, Plaintiff must not only show "deliberate indifference" by the individual defendants but also by Sheriff Miller himself in his supervision, control and discipline of these defendants. A prison official acts with deliberate indifference only when he "knows of and disregards an excessive risk to an inmate's health or safety." Farmer v. Brennan, 511 U.S. 825, 846 (1994). Neither negligence nor even gross negligence satisfies the "deliberate indifference" standard. Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994), Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991), and municipal supervisors cannot be held liable unless they personally caused or participated in an alleged constitutional deprivation, Gossemeyer v. McDonald, 128 F.3d 481, 494 (7th Cir. 1997). Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable, id. at 495.

This is exactly what Plaintiff has alleged in this case. Plaintiff has not alleged that Sheriff Miller was himself deliberately indifferent to Cox's situation but rather that the correctional officers working under him were deliberately indifferent. While that alleged conduct if proven

can support a cause of action against the Individual Defendants, that conduct does not support a direct cause of action against Shelby County and Sheriff Miller and thus Count IV should be dismissed.[2]

## IV. PLAINTIFF'S STATE LAW NEGLIGENCE CLAIM AGAINST DEFENDANTS SHOULD BE DISMISSED SINCE A CLAIM UNDER THE WRONGFUL DEATH ACT CANNOT BE PREDICATED ON SUICIDE

Plaintiff has sued all of the Defendants in Count V for their alleged negligence and seeks to recover damages under Illinois' Wrongful Death Act (740 ILCS 180).  However, the law does not ordinarily allow a decedent's representatives to recover for tortious conduct under the Wrongful Death Act when the decedent's death is the result of a subsequent suicide.  This rule is frequently referred to by courts as the "suicide rule."  See e.g. Johnson v. Wal-Mart, Stores, Inc., 587 F. Supp.2d 1027 (C.D.Ill. 2008).  Under this general rule, suicide is considered to be an intervening force which breaks the line of causation between an allegedly wrongful act and the person's subsequent death.  AMJUR DEATH § 41 (2009).  The suicide rule generally applies in wrongful death cases provided that the decedent understood the nature of his action (in taking his own life) or if the decision resulted from at least a moderately intelligent power of choice.  Id.  Although a "jailer owes a general duty of due care to his prisoner," Dezort v. Village of Hinsdale, 35 Ill.App.3d 703, 708-09, 342 N.E.2d 468 (2nd Dist. 1976), the Illinois Supreme Court has never determined whether this general duty of care nullifies the suicide rule.

On the other hand, the suicide rule has been applied repeatedly by state and federal courts

---

[2] Additionally, Plaintiff is seeking punitive damages against all of the named Defendants, including Shelby County, in Counts I-IV of the Complaint.  However, punitive damages are not recoverable against a municipality sued under 42 U.S.C. § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).  Accordingly, the claim for punitive damages asserted against Shelby County in Counts II and IV should be stricken.

in Illinois in non-jail settings, and the only clear, recognized exception to this rule is where a person loses his sanity as a result of a head injury caused by a tortfeasor and subsequently commits suicide.  Jarvis v. Stone, 517 F.Supp. 1173 (N.D.Ill. 1981) ("there is no recovery for a suicide or attempted suicide following a tortious act"); Johnson, 587 F.Supp.2d 1027 (dismissing action against retailer that negligently sold wife gun ammunition that wife used during her suicide; wife's suicide was a superseding event relieving retailer of liability for selling ammunition in violation of Illinois law); Cleveland v. Rotman, 297 F.3d 569, 572 (7th Cir. 2002) (affirming dismissal of a claim alleging that a tax attorney's malpractice led to an IRS audit and the taxpayer's suicide; "it is well-established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee").  For example, in Jarvis the defendants allegedly conspired with each other to destroy the plaintiff's business and reputation; having done so, the plaintiff thereafter committed suicide.  Surveying both Illinois and Indiana law, Judge Milton Shadur held that the decedent's death was not actionable since the death was the result of suicide and there was no evidence that the decedent was insane or bereft of reason.  Id. at 1175.  Similarly, in Kleen v. Homak Manuf. Comp. Inc., 321 Ill.App.3d 639, 749 N.E.2d 26 (1st Dist. 2001), the First District dismissed a wrongful death action brought against a firearm manufacturer after a child broke into a house safe and used his family's firearm to commit suicide.  In conclusion, under the suicide rule, alleged tortfeasors are not considered responsible under the Wrongful Death Act for another person's subsequent suicide.  Accordingly, Count V is also subject to dismissal.

## V.  ALTERNATIVELY, DEFENDANTS ARE IMMUNE FOR THEIR ALLEGED FAILURE TO PROPERLY MONITOR AND CARE FOR COX AND OTHERWISE PREVENT COX'S SUICIDE UNDER ILLINOIS' TORT IMMUNITY ACT

Even if the suicide rule does not apply in cases involving a jailer's care of a prisoner, Plaintiff's negligence claim under the Wrongful Death Act cannot stand in the face of Illinois' Tort Immunity Act (745 ILCS 10/1-101 *et. seq.*) ("TIA").  There are actually several provisions in the TIA that are applicable in this case including:

10/3-108– Neither a public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the entity or employee is guilty of "wilful and wanton" conduct in its supervision;

10/4-103– Neither a public entity nor a public employee is liable for the failure to provide a jail or correctional facility or for the failure to provide sufficient equipment, personnel, supervision or facilities at a jail or correctional facility;

10/4-105– Neither a public entity nor a public employee is liable for an injury proximately caused by the failure to furnish or obtain medical care for a prisoner in custody, except where an employee "knows from his observation of conditions that the prisoner is in need of immediate medical care and, through wilful and wanton conduct, fails to take reasonable action to summon medical care," although "nothing in this section requires the periodic inspection of prisoners;"

10/6-105– Neither a public entity nor a public employee is liable for the failure to make a physical or mental examination, or to make an adequate examination for the purposes of determining whether such person has a disease or mental condition that would constitute a hazard to the health or safety of himself or others;

10/6-106(a)– Neither a public entity nor a public employee is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with a mental or physical illness or from failing to prescribe for mental or physical illness;

10/2-201– A public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused;

10/2-109– A public entity is not liable for an injury resulting from an act or omission of its employees where the employee is not liable; and

10/2-204–A public employee is not liable for an injury caused by the act or omission of another person.

While the Complaint alleges that Defendants committed various negligent acts and omissions (Comp. ¶ 45, subparagraphs a-l), it is clear that the acts and omissions described by Plaintiff fall under the panoply of TIA immunities. For example, Plaintiff claims that Defendants failed to properly screen Plaintiff as a suicide risk and to obtain a complete psychological history (subparas. a-c), but such omissions are clearly insulated by §§ 10/6-105 and 10/6-106(a) of the TIA. To be clear, every alleged purported act or omission described in paragraph 45 of Plaintiff's Complaint is protected by one or more sections of the TIA:

| **Allegations in the Complaint:** | **Applicable TIA sections:** |
|---|---|
| (a-c) failed to screen Cox and obtain a psychological history | §§ 10/6-105, 10/6-106(a) |
| (d) failed to recommend "prisoner supervision intensity" | §§ 10/3-108, 10/4-103 |
| (e, f, h, l) failed to sufficiently observe or monitor Cox | §§ 10/3-108, 10/4-103, 10/6-105 |
| (g) failed to have Cox see a physician | §§ 10/4-105, 10/6-105 |
| (j) failed to remove sharp instruments, which allowed Cox to construct a sheet which was used to hang himself | §§ 10/3-108 |
| (k) failed to train officers regarding observing inmates | §§ 10/3-108, 10/4-103, 10/6-105 |
| (i) failed to log inspections of the cells | §§ 10/3-108, 10/4-103, 10/6-105[3] |

Additionally, much of the Correctional Defendants' allegedly negligent conduct is protected by the broad immunity provided under § 10/2-201 of the TIA, which protects public employees for their discretionary actions in determining policy. Moreover, §§ 10/2-204 and 10/2-109 of the TIA immunize public entities and their employees "for an injury caused by the act or omission of another person." Since Cox's suicide was caused by Cox's deliberate decision

---

[3] Additionally, Plaintiff cannot show that Defendants' failure to log their inspections (which were purportedly inadequate) proximately caused Cox's suicide.

to take his own life, the TIA appears to codify the "suicide rule" outlined in Section V above.

The applicability of the TIA in a suicide case was considered earlier this year by a federal court in the Southern District of Illinois in <u>Jones v. Hileman</u>, 2009 WL 1259155 (S.D.Ill.). In <u>Jones</u>, an adult son took his rifle outside and called 911 to inform emergency dispatchers of his intent to commit suicide. At the scene, police officers arrested the son's father (who was trying to prevent the son from killing himself) and were at the scene when the son fatally shot himself in the chest. The father, as representative for the son's estate, filed a wrongful death claim against the officers who came to the scene but the officers claimed immunity, citing various sections under the TIA. The court granted the officers' motion, holding that the officers could not be liable under § 4-102 of the TIA for their failure to provide "adequate police protection or services." While § 4-102 is not the applicable TIA section in this case, numerous other TIA provisions are, in fact, applicable to the facts alleged by Plaintiff in the Complaint. In conclusion, Count V is barred by the applicable provisions of the TIA.

## VI. PLAINTIFF'S NEGLIGENT SPOILATION OF EVIDENCE CLAIM SHOULD BE DISMISSED SINCE THERE WAS NO DUTY TO MAINTAIN A VIDEO SURVEILLANCE SYSTEM AT THE SHELBY COUNTY JAIL OR TO KEEP VIDEOTAPES FOR ANY PARTICULAR LENGTH OF TIME

In Count VI, Plaintiff claims that Shelby County maintained a video surveillance system which recorded the activities of inmates at the Shelby County Jail but that jail officials subsequently erased the events of June 21, 2008 from the surveillance system. Plaintiff does not specify in the Complaint, however, what specific videotape Plaintiff was seeking or indicate whether Plaintiff ever requested that any videotapes be held after Cox's death. Plaintiff also fails to indicate in the Complaint when Shelby County erased or "wrote over" the videotapes made on

June 21, 2008.  In any event, Illinois courts do not recognize negligent spoliation of evidence as an independent cause of action; rather, "negligent spoliation" claims are considered to be a derivative action that arise out of other causes of action, such as an action for negligence.  Babich v. River Oaks Toyota, 377 Ill.App.3d 425, 879 N.E.2d 420 (1st Dist. 2007).  Since Plaintiff's negligence claim is subject to dismissal (as outlined in section V above), Plaintiff's negligent spoliation claim falls with it.  Moreover, negligent spoliation claims require a showing of a duty to protect evidence, a breach of that duty, causation, and damages.  Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502 (7th Cir. 2007) (applying Illinois law).  With respect to the first element, a person generally has no duty to preserve evidence, although a duty to preserve can arise out of an agreement or contract, such as an insurance contract.  Spinelli v. Monumental Life Ins. Co., 476 F.Supp.2d 898 (N.D.Ill. 2007).

In this case, Plaintiff has not shown that an agreement or contract ever existed for Shelby County to preserve evidence.  Additionally, Plaintiff's conclusory assertion that Shelby County had a duty to maintain a video surveillance system and to preserve videotapes need not be accepted by this Court given the absence of any supporting facts suggesting that a duty to preserve, in fact, actually existed.  Ashcroft v. Iqbal, 129 S.Ct. 1937 (May 18, 2009) (Rule 8 does not require detailed factual allegations but does call for sufficient factual matter to "state a claim that is plausible on its face;" legal conclusions must be supported by factual allegations and court need not accept mere conclusions unsupported by any facts).  In sum, since Plaintiff has not provided any factual basis for its conclusory assertion that prison officials owed a duty to videotape their premises (and to then retain those videotapes for any particular length of time), Plaintiff's negligent spoliation claim should be dismissed.

## CONCLUSION

WHEREFORE Defendants respectfully request the dismissal of all counts in the Complaint except for Count III and also for the dismissal of Defendants Shelby County and Sheriff Michael Miller.

**s/ Jason W. Rose**
JASON W. ROSE, Atty Bar No. 06208130
MICHAEL W. CONDON, Atty Bar No. 06192071
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone: 630-773-4774
Fax: 630-773-4851
jrose@hcbattorneys.com
mcondon@hcbattorneys.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CRYSTAL PERKS, as Special Administrator of the Estate of JASON WAYNE COX, Sr., Deceased | ) ) ) | |
| Plaintiff, | ) ) | Case No.  09 C 3154 |
| v. | ) ) | |
| COUNTY OF SHELBY, et al. | ) ) | Judge Richard Mills Magistrate Judge Charles H. Evans |
| Defendants. | ) ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2009, I filed the foregoing ***Defendants' Memorandum of Law in Support of Their Motion To Dismiss Counts I, II, IV, V, and VI of Plaintiff's Complaint***, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

TO:    Eugene K. Hollander
       The Law Offices of Eugene Hollander
       33 N. Dearborn Street
       Suite 2300
       Chicago, IL 60602
       Ehollaner@ekhlaw.com
       *Attorney for Plaintiff*

       D. Bradley Blodgett
       Hinshaw & Culbertson, LLP
       400 S. Ninth Street, Suite 200
       Springfield, IL 62701
       bblodgett@hinshawlaw.com
       *Attorney for Cheryl Anne Woods*

       Mark D. Hassakis
       Hassakis & Hassakis, P.C.
       Boston Building
       206 South Ninth Street, Suite 201
       P.O. Box 706
       Mt. Vernon, IL 62864
       mhass@hassakislaw.com
       *Co-Plaintiff's Attorney*

                                    **s/ Jason W.  Rose**
                                    JASON W.  ROSE, Atty Bar No. 06208130
                                    MICHAEL W. CONDON, Atty Bar No. 06192071
                                    HERVAS, CONDON & BERSANI, P.C.
                                    333 Pierce Road, Suite 195
                                    Itasca, IL 60143-3156
                                    Phone:  630-773-4774
                                    Fax:  630-773-4851
                                    jrose@hcbattorneys.com
                                    mcondon@hcbattorneys.com