E-FILED
Monday, 31 August, 2009  02:29:08 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CRYSTAL PERKS, as Special Administrator )
of the Estate of JASON WAYNE COX, SR., )
Deceased, )
)
Plaintiff, )
v. )          No. 09-3154
)
COUNTY OF SHELBY, an Illinois )
Corporation, d/b/a SHELBY COUNTY )
JAIL, SHERIFF MICHAEL MILLER, )
TERRY B. HEIMAN, ADAM D. SMITH, )
CORRECTIONAL OFFICER RYAN )
MOORE (Star No. 408), CHERYL ANNE )
WOODS and VAL RHODES, )
)
Defendants. )

OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the motion [d/e 25] filed by

Defendant Cheryl Anne Woods to dismiss Count I of the Plaintiff's

complaint.  Pending also is the motion [d/e 29] to dismiss Counts I, II, IV,

V and VI of the Plaintiff's complaint filed by Defendants Val Rhodes,

County of Shelby, Michael Miller, Terry B. Heiman, Adam D. Smith and

Ryan Moore.

## I. BACKGROUND

This is a civil rights action pursuant to 42 U.S.C. § 1983, wherein the Plaintiff asserts various claims under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.  The Plaintiff also seeks damages against the Defendants under the Illinois Wrongful Death Act and under the common law of Illinois for the negligent spoliation of evidence.

Plaintiff Crystal Perks is the Special Administrator of the Estate of Jason Wayne Cox, Sr.  According to the complaint, Cox was convicted of the misdemeanor offense of criminal trespass to property and was sentenced in the Circuit Court of Shelby County to a six month term of incarceration. Perks also alleges that Cox was charged with contempt of court, though the court did not adjudicate his guilt.  Thereafter, Cox began his term of incarceration in the Shelby County Jail in Shelbyville, Illinois.

The Defendants include the following: (1) Shelby County, Illinois; (2) Sheriff Michael Miller, the duly elected law enforcement official representing the county; (3) Terry B. Heiman, a correctional officer

2

employed by the county at the Shelby County Jail; (4) Adam D. Smith, a county correctional officer; (5) Ryan Moore, also a county correctional officer; (6) Cheryl Anne Woods, a licensed clinical social worker employed by Shelby County; and (7) Val Rhodes, a supervising correctional officer employed by the county at the Shelby County Jail.[1]

The complaint alleges that when he was incarcerated, Cox was very agitated, uncooperative and he had to be forcibly subdued.  Smith, the correctional officer, recommended that Cox be further evaluated.  On June 11, 2008, Cox advised Moore that he lacked close family and friends in the community, had a prior psychiatric history, had a history of drug abuse, and had attempted to commit suicide in January 2008.  Moore observed that Cox, who was bi-polar and suffered from depression, showed signs of or reported mental distress.  The complaint further alleges that although Moore was required to make and arrange an appropriate referral to a competent medical professional, he failed to do so.

Perks also alleges that on or about June 13, 2008, Cox advised

---

[1]Moore, Heiman, Smith and Rhodes will at times be referred to as the "Correctional Officer Defendants."

3

Woods, the licensed clinical social worker, about a prior suicide attempt approximately one year prior to his incarceration.  Cox also told Woods that he had abused narcotics, experienced visual and auditory hallucinations, did not know "if he could stand incarceration," and requested that his medication be increased.  According to the complaint, the Defendants did not contact a physician in order to have Cox's medication increased and/or modified.  On June 21, 2008, the Defendants failed to make the statutory periodic inspection of Cox, who committed suicide on that date while in his jail cell.

## II. ANALYSIS

### A. Legal standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include sufficient facts "to state a claim for relief that is plausible on its face."  Justice v. Town of Cicero, __ F.3d __, 2009 WL 2477644, at *1 (7th Cir. Aug. 14, 2009) (quoting Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

### B. Woods's motion to dismiss Count I

In Count I, the Plaintiff asserts that several Defendants, including Woods, violated her substantive due process rights. Specifically, Perks alleges that Woods acted with deliberate indifference to the serious psychiatric, psychological, and/or medical needs of Cox, by failing to classify him as a suicide risk, when she knew or should have known of several factors which made him such a risk. Moreover, Woods acted with deliberate indifference to the serious psychiatric, psychological and/or medical needs of Cox by failing to make a specific recommendation for supervision intensity.

Count III includes a claim for cruel and unusual punishment, in violation of the Eighth Amendment and 42 U.S.C. § 1983, which is directed

at Woods and other Defendants.  Citing <u>Antonelli v. Sheahan</u>, 81 F.3d 1422 (7th Cir. 1996), Woods contends that this Court must make a preliminary determination what status–pretrial detainee or prisoner–is properly attributed to the decedent during the time of his detainment when his rights were allegedly violated.  <u>See</u> <u>id.</u> at 1427 n.2.  The text of the Eighth Amendment prohibits "cruel and unusual punishment" of a prisoner.  The Due Process Clause prohibits punishment of a pretrial detainee.  <u>See</u> <u>Antonelli</u>, 81 F.3d at 1427.

Woods asserts that the allegations in the complaint show that Cox was a prisoner in the jail.  In paragraph 5, Perks alleges that the decedent was convicted of an offense and sentenced to a six-month term of incarceration on June 11, 2008.  Other allegations in the complaint refer to events after his incarceration for his conviction.  Woods contends, therefore, that Cox was a prisoner and not a pretrial detainee.

Woods alleges that Counts I and III of the complaint include the same allegations directed against her.  However, Perks seeks relief pursuant to different constitutional provisions.  Woods contends that when a particular

6

United States Constitutional Amendment provides an explicit textual source of constitutional protection against a sort of governmental behavior, it is that Amendment, and not the more generalized notion of "substantive due process," which must be the guide for analyzing the claims. Woods notes that in similar circumstances, a district court has dismissed the generalized claims under the Fifth and Fourteenth Amendments, while permitting and analyzing the prisoner's claims pursuant to the Eighth Amendment. See Medina-Claudio v. Pereira, 443 F. Supp.2d 208, 211 (D. Puerto Rico 2006); see also Graham v. Connor, 490 U.S. 386, 388 (1989) (holding that the Fourth Amendment's "objective reasonableness" standard, and not substantive due process, applies to a claim involving the use of executive force in effecting an arrest). On that basis, Woods asserts that the Eighth Amendment pleading in Count III should proceed, while the generalized claims against her in Count I should be dismissed.

In her response brief, Perks alleges that the although the decedent was a prisoner, and thus can maintain a claim under the Eighth Amendment, he was also a pretrial detainee because his guilt or innocence had not yet been

adjudicated as to the contempt charge.  Accordingly, the Plaintiff's decedent was both a pretrial detainee and a prisoner.  As Perks notes, the analysis under either constitutional provision is the same.  <u>Board v. Farnham</u>, 394 F.3d 469, 478 (7th Cir. 2005).

The Court agrees that it is premature at this early stage to dismiss Count I.  Dismissal would be pointless at this stage of the litigation, since the analysis is the same under Perks's Fourteenth or Eighth Amendment claims.  Based on the allegations in the complaint, moreover, it appears that at the time of his death, Cox could correctly be described as both a pretrial detainee and a prisoner.  Accordingly, Woods's motion to dismiss Count I will be DENIED.

<u>C. Motion to dismiss Counts I, II, IV, V and VI</u>

(1)

The Defendants other than Woods have moved to dismiss Counts I, II, IV, V and VI.  They note that in Counts I and II, Perks alleges that the Correctional Officer Defendants were deliberately indifferent to Cox's condition and that their conduct violated his due process rights under the

Fourteenth Amendments.  Count I is asserted solely against the Correctional Officer Defendants, while Count II is based on Sheriff Miller and Shelby County's failure to adequately train, supervise and discipline the Correctional Officer Defendants.

The Defendants contend that Perks's two Due Process claims (Counts I & II) should be dismissed because the complaint alleges that Cox had been convicted prior to his incarceration.  Thus, the Eighth Amendment (and not the Due Process Clause) applies in this case.  This is the same reason articulated by Woods in her motion to dismiss Count I.  For the reasons already provided, therefore, the motion to dismiss is DENIED as to Counts I and II.

(2)

The Defendants also contend that the official capacity claims against the individual Defendants are redundant and subject to dismissal, since the Plaintiff has also sued the entity, Shelby County, which employs the individuals.  An official capacity suit shall be treated as a suit against the entity, which is the real party in interest.  See Kentucky v. Graham, 473

9

U.S. 159, 165-66 (1985).  To the extent that the complaint asserts claims against the individual Defendants in their official capacities, the motion to dismiss as to those claims is ALLOWED.

(3)

In Count III, Perks alleges that Cox's Eighth Amendment right to be free from cruel and unusual punishment was violated by the Correctional Officer Defendants.  Count IV is directed at Shelby County and Sheriff Miller's alleged violations of Cox's Fourteenth Amendment rights. According to the Defendants, the count which is directed at Shelby County should be dismissed from this case since the Plaintiff has not alleged that the "deliberate indifference" of the Correctional Officer Defendants was pursuant to a custom, policy or practice of Shelby County.  Because the doctrine of respondeat superior does not apply to § 1983 claims, Shelby County and Sheriff Miller are only liable in this case if the Individual Defendants' "deliberate indifference" was the result of a custom or policy established by County officials.  See Hansen v. Board of Trustees of Hamilton Southeastern, 551 F.3d 599, 615-16 (7th Cir. 2008).

In support of their motion, the Defendants claim that Perks has not asserted that Cox's suicide was caused by an unconstitutional custom or policy.  Rather, in her complaint, Perks alleges that Shelby County policy required that (a) correctional employees determine the applicable level of care to be rendered to inmates and (b) refer individuals to a mental health professional for further examination when faced with a potentially suicidal individual like Cox.  The Defendants assert that although the complaint alleged Moore failed to follow County policy in this case, the County and the Sheriff are simply not liable for any alleged failure by Moore (or any correctional officer) to follow County protocol.

Additionally, the Defendants contend that Shelby County and Sheriff Miller are not liable for their alleged negligent failure to "instruct, supervise, control and discipline" the Defendant Correctional Officers.  Although Perks alleges that the County and Sheriff either knew or should have known about the misconduct of those Defendants, these are allegations of simple negligence and are not enough to support constitutional claims.  Regarding Sheriff Miller, Perks alleges only negligent supervision and control of the

Correctional Officer Defendants.  The Defendants contend that such allegations do not support a direct cause of action against a supervisor or policymaker such as the sheriff.

In her response, Perks contends that she alleged that five correctional officers and social workers acted with deliberate indifference to Cox's constitutional rights.  One way for a plaintiff to establish the existence of a policy is through "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice."  Estate of Sims ex rel. v. County of Bureau, 506 F.3d 509, 515 (7th Cir. 2007).  Perks asserts that because she has alleged more than a "single incident" of deliberate indifference by the individual Defendants, her claim should go forward at this stage of the litigation.  The Plaintiff requests, however, that if the Court finds that the allegations are inadequate, that she be given the opportunity to re-plead allegations of failure to train or supervise with specificity.

The complaint provides very little detail specifying the Plaintiff's theory of how a policy caused the alleged constitutional injuries in this case.  Although the complaint provides few facts in support of the claims, the

Court finds that there is just enough to state a claim for relief that is plausible on its face.  This is based on an extremely liberal reading of the complaint, wherein all inferences are drawn in favor of the Plaintiff.  On that basis, the Court will DENY the motion as to Counts III and IV.

(4)

In Count V, the Plaintiff seeks to recover for the Defendants' alleged failure to protect Cox during his incarceration, pursuant to the Illinois Wrongful Death Act, 740 ILCS § 180.  She contends that Shelby County, through its agents and employees, was guilty of various careless and negligent acts or omissions which caused him to commit suicide.

The Defendants contend, however, that based on the "suicide rule," one may not recover under the Wrongful Death Act for the alleged tortious conduct of a Defendant when the person subjected to the tortious conduct committed suicide.  "It is well established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee."  Crumpton v. Walgreen Co., 375 Ill. App.3d 73, 79

13

(1st Dist. 2007) (quoting <u>Chalhoub v. Dixon</u>, 338 Ill. App.3d 535, 539-40 1st Dist. 2003)); <u>see</u> <u>also</u> <u>Cleveland v. Rotman</u>, 297 F.3d 569, 572 (7th Cir. 2002).  The Defendants note that although a "jailer owes a general duty of due care to his prisoner," <u>see</u> <u>Dezort v. Village of Hinsdale</u>, 35 Ill. App.3d 703, 708 (2nd Dist. 1976), the Illinois Supreme Court has never determined whether this general duty of care nullifies the suicide rule.

The Plaintiff claims that it is "hardly conceivable" that the suicide rule would apply in a case such as this involving a prisoner who is incarcerated, especially under the facts here.  Although that may be overstating it, the Court finds that based on the duty of due care, an argument can be made that the suicide rule applies under these facts.  It could also be argued that it does not apply.  Because it is debatable whether the jailer's general duty of due care means that the suicide rule would not apply in cases like this, the Court is reluctant to determine as a matter of law the rule's applicability when the issue is pending before it on a motion to dismiss.  Thus, the motion to dismiss Count V pursuant to the suicide rule is DENIED.

(5)

14

The Defendants further assert that even if the "suicide rule" is held

not to apply in the context of a jail suicide case, several provisions in the

Illinois Tort Immunity Act ("TIA"), <u>see</u> 745 ILCS § 10/1-101 <u>et</u> <u>seq.</u>, should

apply to bar Count V.  Specifically, they point to the following provisions

which provide in part:

> 10/3-108(a)– Except as otherwise provided in this Act, neither
> a local public entity nor a public employee who undertakes to
> supervise an activity on or the use of any public property is
> liable for an injury unless the local public entity or public
> employee is guilty of willful and wanton conduct in its
> supervision;
>
> 10/4-103– Neither a local public entity nor a public employee is
> liable for failure to provide a jail, detention or correctional
> facility, or if such facility is provided, for failure to provide
> sufficient equipment, personnel, supervision or facilities therein;
>
> 10/4-105– Neither a local public entity nor a public employee is
> liable for injury proximately caused by the failure of the
> employee to furnish or obtain medical care for a prisoner in his
> custody; but this Section shall not apply where the employee,
> acting within the scope of his employment, knows from his
> observation of conditions that the prisoner is in need of
> immediate medical care and, through willful and wanton
> conduct, fails to take reasonable action to summon medical care.
> Nothing in this Section requires the periodic inspection of
> prisoners;
>
> 10/6-105– Neither a local public entity nor a public employee

acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others;

10/6-106(a)–Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness or addiction or from failing to prescribe for mental or physical illness;

10/2-201–Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion though abused;

10/2-109–A local entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable; and

10/2-204–Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person.

The Defendants assert that the negligent acts and omissions which

Perks alleges were committed fall under the various TIA immunities. For

example, the allegations that Defendants failed to properly screen Cox as a

suicide risk and to obtain a complete psychological history are insulated by §§ 10/6-105 and 10/6-106(a) of the TIA.  The allegation that Defendants failed to recommend "prisoner supervision intensity" is barred by §§ 10/3-108 and 10/4-103.  The allegation that they failed to sufficiently observe or monitor Cox is precluded by §§ 10/3-108, 10/4-103 and 10/6-105. Moreover, the assertion that Defendants failed to have Cox see a physician is insulated by §§ 10/4-105 and 10/6-105.  The contention that Defendants failed to remove sharp instruments, which allowed Cox to construct a sheet which was used to hang himself, is barred by § 10/3-108.   The allegation that they failed to train officers regarding observing inmates is precluded by §§ 10/3-108, 10/4-103 and 10/6-105.  Finally, the assertion that Defendants failed to log inspections of the cells is barred by §§ 10/3-108, 10/4-103 and 10/6-105.

In her response, Perks states that the immunities provided under the TIA operate as affirmative defenses.  <u>See</u> <u>Michigan Ave. Nat. Bank v. County of Cook</u>, 191 Ill.2d 493, 503 (2000).  She further contends that the Defendants should not raise this argument in a motion to dismiss under

17

Rule 12(b)(6) because "affirmative defenses do not justify dismissal under Rule 12(b)(6) [inasmuch as] litigants need not try to plead around defenses." <u>Doe v. GTE Corp.</u>, 347 F.3d 655, 657 (7th Cir. 2003).  In other words, the existence of an affirmative defense "does not undercut the adequacy of the claim."  <u>Deckard v. General Motors Corp.</u>, 307 F.3d 556, 560 (7th Cir. 2002).

Although it appears that some of the provisions in the TIA may apply to the claims in Count V, the Court declines at this stage of the litigation to hold that dismissal is appropriate.  It is worth noting that some of the provisions do not apply if the injury results from "wilful and wanton" conduct.  When the complaint is liberally construed, some of the allegations could be said to be directed at conduct which might be described as wilful and wanton.  Accordingly, the Court finds that it is premature to determine whether the TIA provisions serve to bar the claims in Count V.  The motion to dismiss as to Count V is DENIED.

(6)

In Count VI, Perks claims that Shelby County and Sheriff Miller had

a duty to maintain the jail's video surveillance system in working order and that at some unspecified date Shelby County officials erased the events of June 21, 2008 from the surveillance system. According to Perks, this constitutes a "negligent spoliation" of evidence because she will be unable to prove her negligence claim without this video evidence. The Defendants contend that this count should be dismissed since the Plaintiff has not provided any facts showing that Shelby County had a duty to retain videotapes made by the jail's surveillance system for a particular length of time. Moreover, the complaint does not allege that Perks ever made a request to obtain certain videotapes, let alone that Shelby County intentionally erased videotapes concerning Cox's incarceration on June 21, 2008.

The Defendants further claim that Perks does not allege when Shelby County erased or "wrote over" the relevant videotapes. "It is well settled that Illinois courts do not recognize negligent spoliation of evidence as an independent cause of action." Babich v. River Oaks Toyota, 377 Ill. App.3d 425, 431 (1st Dist. 2007) (citing Boyd v. Travelers Ins. Co., 166 Ill.2d 188,

192-93 (1995)).  "An action for negligent spoliation can be stated under existing negligence law without creating a new tort."  <u>Boyd</u>, 166 Ill.2d at 194.  Thus, negligent spoliation of evidence is a derivative action that arises out of other causes of action.  <u>See</u> <u>Babich</u>, 377 Ill. App.3d at 432.  Although there typically is no duty to preserve evidence, such a duty may arise through an agreement, a contract or a statute.  <u>See Boyd</u>, 166 Ill.2d at 195.  In such cases, "a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action."  <u>Id.</u>

Based on the foregoing, it is apparent that negligent spoliation of evidence cannot survive as an independent claim.  At most, it can be maintained as a derivative action of Perks's negligence claim.  The Defendants assert that Plaintiff has not shown that an agreement or contract ever existed for Shelby County to preserve evidence.  There is only the Plaintiffs' conclusory assertion that it had a duty to maintain a video surveillance system and to preserve videotapes.  The Defendants contend that because Perks has not provided any factual basis for her conclusory

assertion, her spoliation claim should be dismissed.

Perks responds by asserting that Defendants owed Cox a duty, or voluntarily assumed a duty.  The Plaintiff further alleges that, because the Defendants erased the videotapes of June 21, 2008, she will be unable to prove her negligence cause of action.  She contends that she need not allege the specific tape or the Defendants' actual retention policy.  The Plaintiff asserts that her allegation that the Defendants voluntarily assumed a duty has sufficiently put the Defendants on notice of her spoliation claim.

Despite the lack of any factual detail, the Court will permit Perks's claim to go forward, but only as derivative of her negligence claim in Count V.  Because negligent spoliation is not a viable independent cause of action, see Babich, 377 Ill. App.3d at 431, the Court will ALLOW the motion to dismiss as to Count VI.

Ergo, the Defendant's motion to dismiss Count I [d/e 25] is DENIED.

The Defendants' motion to dismiss Counts I, II, IV, V and VI [d/e 29] is DENIED IN PART and ALLOWED IN PART.  The motion is DENIED as to Counts I and II.  The motion is ALLOWED to the extent that the

21

complaint asserts claims against the individual Defendants in their official capacities.

The motion as to Counts III and IV is DENIED.

The motion as to Count V is DENIED.

The motion as to Count VI is ALLOWED, though the Plaintiff may pursue her negligent spoliation claim as derivative of the negligence claim.


ENTER: August 31, 2009

FOR THE COURT:

s/Richard Mills
United States District Judge

22